Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

District of South Carolina ▾

_____ Division

Glen K. LaConey

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

See Attached

_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☐ Yes  ☑ No

USDC CLERK, COLUMBIA, SC
RECEIVED
2021 AUG 25  AM 10: 45

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| Name | Glen K. LaConey | | |
|---|---|---|---|
| Address | P.O. Box 2673 | | |
| | Columbia | SC | 29202 |
| | *City* | *State* | *Zip Code* |
| County | Richland | | |
| Telephone Number | (803) 451-1552 | | |
| E-Mail Address | refundsplus@outlook.com | | |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| Name | Leon Lott | | |
|---|---|---|---|
| Job or Title *(if known)* | While acting de facto as Richland County Sheriff | | |
| Address | 5623 Two Notch Road | | |
| | Columbia | SC | 29223 |
| | *City* | *State* | *Zip Code* |
| County | Richland | | |
| Telephone Number | 803-576-3000 | | |
| E-Mail Address *(if known)* | sheriff@rcsd.net | | |

✔ Individual capacity    ☐ Official capacity

Defendant No. 2

| Name | Alan McCrory Wilson | | |
|---|---|---|---|
| Job or Title *(if known)* | While acting de facto as South Carolina Attorney General | | |
| Address | Rembert Dennis Building,1000 Assembly Street, Room 519 | | |
| | Columbia | SC | 29201 |
| | *City* | *State* | *Zip Code* |
| County | Richland | | |
| Telephone Number | (803) 734-3596 | | |
| E-Mail Address *(if known)* | awilson@scag.gov | | |

✔ Individual capacity    ☐ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Joshua Koger, Jr. |
| Job or Title *(if known)* | While acting de facto as legal counsel for LaConey |
| Address | 1237 Gadsden Street |
| | Columbia | SC | 29201 |

*City*      *State*      *Zip Code*

| | |
|---|---|
| County | Richland |
| Telephone Number | (803) 450-5056 |
| E-Mail Address *(if known)* | kogerlaw@aol.com |

☑ Individual capacity    ☐ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | William A. Hodge |
| Job or Title *(if known)* | While acting de facto as legal counsel for LaConey |
| Address | 1116 Blanding Street, Suite 100 |
| | Columbia | SC | 29201 |

*City*      *State*      *Zip Code*

| | |
|---|---|
| County | Richland |
| Telephone Number | (803) 457-2216 |
| E-Mail Address *(if known)* | wah@williamhodgelaw.com |

☑ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

See attached

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

See attached

## III.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

See attached

B.    What date and approximate time did the events giving rise to your claim(s) occur?

See attached

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See attached

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Worsened cataracts, while unlawfully detained. Medical treatment unavailable.

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

1. $150.00 per day of unlawful detention and loss of liberty

2. $150.00 for loss of cellphone

3. $5,000.00 for loss of personal property

4. $50.00 per day in medical damages for worsened vision

5. $250,000.00 punitive damages for intentional infliction of extreme emotional distress, deprivation and loss of property, cruel and unusual punishment and conspiracy against civil rights, to be awarded jointly and severally against all defendants.

6. Findings of Fact: [See attached.]

**Caption**

**Defendants**:

Leon Lott; Alan McCrory Wilson; Joshua Koger, Jr., Esquire; William A. Hodge, Esquire; Clifton B. Newman; R. Knox McMahon; Robert M. Madsen, Esquire; Jason Scott Chehoski, Esquire; Jocelyn T. Newman and Lori L. Pelzer, a.k.a. Lori L. Washington

**I. (B) Defendants**:

Defendant No. 5

Clifton B. Newman
217 Beaver Dam Road
Columbia, SC 29223-3121
Richland County
Individual capacity
(803) 331-3257
cnewmanj@sccourts.org

Defendant No. 6

R. Knox McMahon
205 E. Main Street, Suite 146
Lexington, SC 29072-3557
Lexington County
Individual capacity
(803) 309-3830
kmcmahonr@gmail.com

Defendant No. 7

Robert M. Madsen, Esquire
202 East Main Street
Lexington, SC 29072
Lexington County
Individual capacity
(803) 785-8873
rmadsen@lex-co.com

Defendant No.8

Jason Scott Chehoski, Esquire
202 East Main Street
Lexington, SC 29072
Lexington County
Individual capacity
(803) 785-8873
jchehoski@lex-co.com

Defendant No. 9

Jocelyn T. Newman
3645 Madrid Drive North
Augusta, GA 30906-4038
Augusta-Richmond County
Individual capacity
(803) 576-1779
jnewmanj@sccourts.org

(Alternative)
1701 Main Street, First Floor, West Wing
Columbia, SC 29201
Richland County

Defendant No. 10

Lori L. Pelzer, a.k.a. Lori L. Washington
4501 Circle 75 Parkway SE, Apt. 1109
Atlanta, GA 30339-3987
Fulton County
Individual capacity

## II. (B)

Arrest and imprisonment without probable cause, violative of right against unreasonable searches and seizures, protected by the Fourth Amendment; retaliation for exercise of right to free speech, protected by the First Amendment; Right to counsel for indigent defendant under Due Process Clause of the Fourteenth Amendment; Sixth Amendment right to trial before a fair and impartial tribunal; violation of right to speedy trial under the Sixth Amendment; violation of Eighth Amendment right to protection against cruel and unusual punishment; denial of due process and equal protection under the Fourteenth Amendment; conspiracy against civil rights under 18 U.S.C. § 241

## II. (D)

**Leon Lott**

1.    Lott, while acting <u>de facto</u>, under color of state law, and while exceeding the scope of his official duties as Sheriff of Richland County, State of South Carolina, and in his personal capacity, did knowingly, maliciously, wantonly and with intent to commit fraud upon the court, affect the arrest and detention of LaConey, without probable cause, for the charges of Harassment Second Degree, two counts, against four state judges, in their official capacities, when state law defines Harassment Second Degree as an "intrusion into the private life of a targeted person that serves no legitimate purpose". Undoubtedly, the actions of LaConey utterly failed to rise to the level of the charge, where LaConey's communications to the complainants were directed to their official capacities and "served a legitimate purpose"; and, where the complainants failed to cite LaConey for contempt.

2.    Lott, while acting <u>de facto</u>, under color of state law, and while exceeding the scope of his official duties as Sheriff of Richland County, State of South Carolina, and in his personal capacity, did knowingly, maliciously, wantonly and with intent to commit fraud upon the court, arrest and detain LaConey, without probable cause, for the charge of Harassment First Degree against Pelzer, based on LaConey's exercise of free speech about Pelzer and her business activities.

3.    Lott, while acting <u>de facto</u>, under color of state law, and while exceeding the scope of his official duty as Sheriff of Richland County, State of South Carolina, and in his personal capacity, did knowingly, maliciously, wantonly and with intent to commit fraud upon the court, arrest and detain LaConey, without probable cause, for the charge of Threatening the Use of Destructive Devices, based on privileged communications between LaConey and his counsel, Koger.

4.    Lott did commit fraud upon the court.

5.    Lott did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

[LaConey acknowledges that, ordinarily, the **South Carolina Tort Claims Act** ("Tort Claims Act") is the exclusive and sole remedy for any tort committed by an employee of a governmental entity, while acting within the scope of the employee's official duty. However, because Lott knowingly exceeded the scope of his official duty and did knowingly, maliciously, wantonly, and with intent to commit fraud upon the court, arrest and detain the LaConey, the Tort Claims Act may not be construed to confer immunity to Lott from suit and liability, if it is proved that the Lott's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.]

**Alan McCrory Wilson**

1.    Alan McCrory Wilson, while acting <u>de facto,</u> under color of state law, and while exceeding the scope of his official duty as Attorney General of the State of South Carolina, and in his personal capacity, did knowingly, maliciously, wantonly and with intent to commit fraud upon the court, engage in a <u>de facto</u> prosecution against LaConey for the charges of Harassment Second Degree, two counts, Harassment First Degree, and Threatening the Use of Destructive Devices, on the basis

that Wilson knowingly acted, while the trial court, as an alleged victim in the matters, had lost jurisdiction to entertain the same matters, due to disqualification.

2.    Wilson's prosecutions of LaConey were void or otherwise invalid.

3.    Wilson did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

[LaConey acknowledges that, ordinarily, prosecutors enjoy qualified immunity from suits under §1983; however, because Wilson knowingly exceeded the scope of his official duty, through his extrajudicial acts, while knowing the trial court was disqualified, and lacked jurisdiction to entertain the matter, due to a conflict of interest, he waived or otherwise lost immunity, accordingly.]

### Joshua Koger, Jr., Esquire

1.    Joshua Koger, Jr., while acting de facto as LaConey's legal counsel, knowingly acquiesced to a void appointment, issued by the disqualified trial court, to represent LaConey for the charges of Harassment Second Degree, two counts, thereby, denying LaConey his right to counsel.

2.    Koger failed to move for change of venue, when LaConey was entitled thereto.

3.    Koger violated attorney-client privilege by disclosing privileged communications to third parties, resulting in the arrest and detention of LaConey, without probable cause.

4.    Koger did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

### William A. Hodge, Esquire

1.    William A. Hodge, while acting de facto as LaConey's legal counsel, knowingly acquiesced to a void appointment, issued by the disqualified trial court, to represent LaConey for the charges of Harassment First Degree and Threatening the Use of Destructive Devices; thereby, denying LaConey his right to counsel.

2.    Hodge failed to move for change of venue, when LaConey was entitled thereto.

3.    Hodge failed to move for LaConey's release from detention, in accordance with the provisions of an Order for Competency to Stand Trial Examination, issued by the disqualified trial court; thereby, denying LaConey his liberty and subjecting LaConey to cruel and unusual punishment.

4.    The deprivation and loss of LaConey's property, and his job, together with LaConey's worsening cataracts, were the proximate cause of Hodge's failure to move for LaConey's release from detention, as ordered.

5.    Hodge did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

## Clifton B. Newman

1.      Clifton B. Newman, while disqualified as a state judge, due to a conflict of interest, while acting without jurisdiction, and in his personal capacity, did improperly and unlawfully deprive LaConey of counsel for the charges of Harassment Second Degree, two counts. Additionally, Newman denied LaConey due process of law by compelling LaConey to negotiate with the prosecution, without counsel, when Newman acknowledged that there was a reasonable doubt of LaConey's mental capacity to represent himself.

2.      Newman did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

[LaConey acknowledges that, ordinarily, judicial officers are immune from suits under §1983; however, because Newman knowingly engaged in extrajudicial acts, while disqualified and without jurisdiction, due to a conflict of interest, he waived or otherwise lost immunity, accordingly.]

## R. Knox McMahon

1.      R. Knox McMahon, while disqualified as a state judge, due to a conflict of interest, and while acting without jurisdiction, and in his personal capacity, did deny due process of law by issuing an extrajudicial order revoking LaConey's surety bond, for the purpose of a pre-trial competency evaluation, upon consent of LaConey, when there was a reasonable doubt of LaConey's mental capacity to render such consent. McMahon did sign and file the extrajudicial Order for Competency to Stand Trial Examination, which contained a provision for LaConey's release, upon compliance with the order. Upon LaConey's compliance, accordingly, McMahon deprived LaConey of his liberty and subjected LaConey to the deprivation and loss of his property, and to cruel and unusual punishment, by refusing to entertain his own order for LaConey's release from detention, notwithstanding that McMahon was disqualified to do so.

2.      McMahon, while disqualified as a state judge, due to a conflict of interest, and while acting without jurisdiction, and in his personal capacity, did deny LaConey counsel and due process of law by issuing an extrajudicial order appointing a foreign circuit public defender to represent LaConey, in contravention of state law.

3.      McMahon did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

[LaConey acknowledges that, ordinarily, judicial officers are immune from suits under §1983; however, because McMahon knowingly engaged in extrajudicial acts, while disqualified, due to a conflict of interest, and without jurisdiction, he waived or otherwise lost immunity, accordingly.]

## Robert M. Madsen, Esquire

1.      Robert M. Madsen, Esquire, while acting de facto as state Eleventh Circuit Public Defender, and while exceeding the scope of his official duties, and in his personal capacity, did knowingly, maliciously, wantonly and with intent to commit fraud upon the court, did knowingly

acquiesce to a void order of appointment, issued by Knox, to represent LaConey in the state Fifth Circuit Court, in contravention of state law; thereby, depriving LaConey of his right to counsel.

2.    Madsen did engage in extrajudicial acts by improperly assigning an assistant public defender to unlawfully represent LaConey in a foreign state judicial circuit, in contravention of state law.

3.    Madsen did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

[LaConey acknowledges that, ordinarily, public defenders are immune from suits under §1983; however, because Madsen knowingly acted pursuant to the void order of appointment, and while he lacked jurisdiction under state law, he waived or otherwise lost immunity, accordingly.]

## Jason Scott Chehoski, Esquire

1.    Jason Scott Chehoski, Esquire, while acting de facto as assistant state Eleventh Circuit Public Defender, and while exceeding the scope of his official duties, and in his personal capacity, did knowingly, maliciously, wantonly and with intent to commit fraud upon the court, did knowingly acquiesce to a void order of appointment, issued by Knox, to represent LaConey in the state Fifth Circuit Court, in contravention of state law; thereby, depriving LaConey of his right to counsel.

2.    Chehoski did engage in extrajudicial acts, by acting de facto as an assistant public defender, to unlawfully represent LaConey in a foreign state judicial circuit, in contravention of state law.

3.    Notwithstanding the void order of appointment, Chehoski failed to move for change of venue, when LaConey was entitled thereto.

4.    Chehoski failed to move for LaConey's release from detention, in accordance with the provisions of the extrajudicial Order for Competency to Stand Trial Examination, issued by the disqualified trial court, thereby, denying LaConey his liberty and subjecting LaConey to cruel and unusual punishment.

5.    Chehoski did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

[LaConey acknowledges that, ordinarily, public defenders are immune from suits under §1983; however, because Chehoski knowingly acted pursuant to the void order of appointment, and while he lacked jurisdiction, he waived or otherwise lost immunity, accordingly.]

## Jocelyn T. Newman

1.    Jocelyn T. Newman, while disqualified as a state judge, due to a conflict of interest, while acting without jurisdiction, and in her personal capacity, did engage in extrajudicial acts by issuing

an order denying LaConey's release from detention, in contravention of the provisions of the extrajudicial Order for Competency to Stand Trial Examination, issued by the disqualified trial court; thereby, denying LaConey his liberty and subjecting LaConey to cruel and unusual punishment.

2.      Jocelyn Newman did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

[LaConey acknowledges that, ordinarily, judicial officers are immune from suits under §1983; however, because Newman knowingly engaged in extrajudicial acts, while disqualified and without jurisdiction, due to a conflict of interest, she waived or otherwise lost immunity, accordingly.]

**Lori L. Pelzer, a.k.a. Lori L. Washington**

1.      Lori L. Pelzer, a.k.a. Lori L. Washington, did engage in a conspiracy with the co-Defendants, against LaConey's civil rights, by alleging that LaConey had harassed her through his exercise of free speech about her and her business activities.

2.      LaConey was denied a surety bond, deprived of his liberty and subjected to the loss of his job and property, and to cruel and unusual punishment, by her unfounded allegations that LaConey had threatened her and her family with bodily harm.

3.      Pelzer did commit fraud upon the court.

4.      Pelzer did engage in a conspiracy with the co-Defendants against LaConey's civil rights.

### III. Statement of Claim

In the year 2005, Plaintiff, Glen K. LaConey ("LaConey") attempted to enforce judicial judgments in the Fifth Circuit Court, in and for Richland County, State of South Carolina, against Home Assist Real Estate, LLC ("Home Assist"), a South Carolina Limited Liability Company, Case Number 03CP4004186, of which a Lori Pelzer ("Pelzer") was a managing member; and against Lori Pelzer personally, Judgment Roll Number 247572. In those matters, LaConey alleged, and presented evidence to the trial court, that Pelzer had engaged in fraudulent conveyances to place her personal assets and the assets of Home Assist beyond the reach of LaConey and other judgment creditors. Additionally, it is undisputed that Home Assist did liquidate its business, without statutorily winding up, to the detriment of LaConey and other judgment creditors. Subsequently, Pelzer filed a false police report alleging that LaConey had engaged in a campaign of harassment against her by creating a website, whereby, LaConey allegedly threatened physical harm to Pelzer and her family. Pelzer further alleged that LaConey had sent her harassing text messages. On or about **August 22, 2011**, LaConey was arrested by the Richland County Sheriff's Department for two counts of Harassment, Second Degree, against four Fifth Circuit judges, on four separate occasions, relative to his enforcement of the said judgments.

Because the entire Fifth Circuit Court was the alleged victim in those cases, both the Fifth Circuit Solicitor's and Public Defender's Offices were disqualified from and conflicted out of the case. South Carolina Attorney General Alan McCrory Wilson ("Wilson") assumed prosecution and Attorney Mathias G. Chaplin ("Chaplin") was appointed by the Fifth Circuit Court to represent LaConey. Chaplin was relieved as LaConey's counsel, based on LaConey's proposition that, as an attorney who practiced regularly

1 of 17

before the Fifth Circuit Court, Chaplin was conflicted in his representation of LaConey. The trial court concurred and appointed Joshua Koger, Jr. as substitute counsel to represent LaConey. After failing to notify LaConey of his appointment for more than a year, Koger requested that the assigned Assistant Attorney General arrange for a meeting between Koger and LaConey, on the pretext of a court appearance. LaConey did appear and was introduced to Koger by Assistant Attorney General, Ashley A. McMahan. LaConey responded with a disciplinary complaint against Koger for failing to contact LaConey after his appointment. The Disciplinary Office dismissed the matter for lack of jurisdiction, notwithstanding that Koger violated Rules 1.3, 1.4, and 3.2, South Carolina Rules of Professional Conduct. Subsequently, Koger refused to communicate further with LaConey, until **June 30, 2014**, when Koger emailed notice to LaConey that his trial would commence on **July 7, 2014**. (Again, the charges had been pending since **August 2011**.)

LaConey proceeded to post derogatory comments about Koger online, after which, Koger moved the court/alleged victim to be relieved as LaConey's counsel. Additionally, Koger lodged a false criminal complaint with both the Fifth Circuit Clerk of Court and the Richland County Sheriff's Department, alleging that LaConey had threatened to "blow up" the Richland County Judicial Center. LaConey was arrested on **July 3, 2014**, on the charge of Threatening the Use of Destructive Devices, Case No. 2014A4010400166, and an unrelated charge of Harassment, First Degree, Case No. 2014A4010202394, against Pelzer. LaConey was initially denied bond, based on Pelzer's allegations that she feared for her safety and the safety of her family. LaConey was a fulltime caregiver for his mother who, after his arrest and denial of bond, resided with his mentally disabled sister, who abused their mother, until LaConey was released on bond on **October 3, 2014**. [LaConey's mother passed on April 6, 2015, the day after Easter and the day before LaConey's

birthday, under heart wrenching circumstances, the significance of which is set forth below.]

On **July 7, 2014**, the day of LaConey's trial for the two Harassment, 2nd Degree charges, Fifth Circuit Judge, Clifton B. Newman ("Newman"), granted Koger's motion to be relieved as LaConey's counsel, then declined to appoint substitute counsel for LaConey, notwithstanding that Newman concurred with the prosecutor's proposition that a mental health evaluation was appropriate for LaConey. Additionally, after LaConey asserted his right to court appointed legal counsel, Newman reiterated his denial to appoint substitute counsel, and directed LaConey to "work it out" with the prosecution, under threat of trial within hours. Newman further denied LaConey's motion for a continuance to prepare for trial. Faced with the threat of trial within hours and without an opportunity for preparation, and while under duress, LaConey pled no contest to both Harassment, Second Degree charges. **Newman recommended mental health counseling as part of the sentences.** (Newman compelled LaConey to negotiate with the prosecution when there was a reasonable doubt of LaConey's mental capacity). LaConey proceeded to file an action for Post-Conviction Relief, Case Number: 2015CP4003441, on **June 11, 2015**, to vacate his pleas. A hearing was convened before Fifth Circuit Judge J. Durham Cole on **February 5, 2016**. Judge Cole filed his written Order of Dismissal on **April 8, 2019**, without notice and without additional hearings on the matter. LaConey appealed the matter to the South Carolina Supreme Court, Case Number 2019-000658, on **April 22, 2019**. On **May 4, 2020**, the Supreme Court transferred the case to the South Carolina Court of Appeals, where it remains pending.

Again, with respect to the threatening and harassment charges, because the entire Fifth Circuit Court in Richland County was the alleged victim in the threatening case, both the

Fifth Circuit Solicitor's and Public Defender's Offices were conflicted out of and disqualified from the case. Likewise, Attorney General Alan McCrory Wilson assumed prosecution and Attorney William A. Hodge ("Hodge") was appointed by a Fifth Circuit Judge to represent LaConey.

On **July 21, 2016**, after declining numerous plea bargains from Wilson, LaConey's bond was revoked, on the pretext of holding a pre-trial competency to stand trial examination. The Order for the examination, filed by Fifth Circuit Judge, R. Knox McMahon ("McMahon"), provided for LaConey's release from detention, after he complied with the examination on **August 1, 2016**, and that LaConey's bond would "remain in effect". **Hodge was a signatory to the Order for examination**. LaConey submits that the Fifth Circuit Court improperly accepted his consent to the examination, on the basis that there was, inter alia, a reasonable doubt of LaConey's competence to render such consent, as advised by Hodge.

Shortly after LaConey complied with the competency examination, LaConey filed a pro se motion for speedy trial, after Hodge declined to do so. While the motion was untimely, it did put Wilson on notice of LaConey's intent to pursue speedy resolution of the case, upon favorable results of the competency examination. [The interval since LaConey's arrest crossed the threshold dividing ordinary and presumptively prejudicial delay. Wilson failed to set the matter for trial since LaConey's arrest.]

After failing to take any action to affect LaConey's release from detention, as ordered, failing to seek trial, and upon LaConey's pro se motion, Hodge was relieved as LaConey's counsel in April 2017. The Lexington County, Eleventh Circuit Public Defender's Office was appointed by Richland County, Fifth Circuit Judge, R. Knox McMahon, to represent LaConey.

Eleventh Circuit Public Defender, Robert M. Madsen ("Madsen"), assigned Assistant Public Defender, Jason Scott Chehoski ("Chehoski"), to represent LaConey in the Richland County, Fifth Circuit Court. Notwithstanding that the Fifth Circuit Court was disqualified from the case, based on the conflict of interest, under South Carolina Code § 14-5-350, circuit judges lack jurisdiction to appoint circuit public defenders in foreign circuits. Additionally, under South Carolina Code § 17-3-520(B)(1)(14), 530(A)(B)(1)(2), circuit public defenders lack jurisdiction to represent criminal defendants in foreign circuits. Therefore, the appointment was null and void, and deprived LaConey of counsel. LaConey submits that both Hodge and Chehoski knowingly acted improperly pursuant to void orders of appointment. Chehoski, who ignored the proposition that the entire Fifth Circuit Court was disqualified, lacked jurisdiction to appoint his office to represent LaConey, and that his office lacked jurisdiction to represent LaConey in a foreign circuit, stated he does "whatever a judge orders [him] to do". Further, both Hodge and Chehoski refused to provide LaConey with a copy of the competency evaluation report for reasons unknown; thereby, denying LaConey an opportunity to assist in his own defense.

In or about **August 2017**, LaConey filed a pro se motion for reinstatement of his bond, notwithstanding that "reinstatement" of his bond was unnecessary, on the basis that the Order for Stand Trial Examination provided for LaConey's release from detention, upon compliance with the order, and that LaConey's bond would "remain in effect". During a hearing on LaConey's motion, before Fifth Circuit Judge Jocelyn T. Newman ("Jocelyn Newman"), the daughter of Defendant Clifton B. Newman, Jocelyn Newman contacted McMahon via telephone, in open court, to inquire whether LaConey's bond was in fact revoked for the purpose of the pre-trial

examination. LaConey and other members of the court were not privy to the conversation. According to Jocelyn Newman, McMahon was unable to recall the attendant circumstances. Further, Jocelyn Newman examined Lori Pelzer, unsworn, while she was seated in the gallery. Pelzer stated that LaConey had been stalking her outside her bedroom window for years, whenever she was intimate with her husband, Melvin K. Pelzer. Pelzer never called the police, nor secured any photographic evidence, in support of her allegations, during the years of the alleged incidents. Chehoski failed to challenge Pelzer's unsworn statements and utterly refused to argue for LaConey's release. Jocelyn Newman declined to release LaConey on bond, notwithstanding the signed and filed Order by McMahon. Disturbingly, after LaConey completed the pretrial competency examination on **August 1, 2016**, Jocelyn Newman was unduly dilatory in finding LaConey fit to stand trial, until her Order, filed on or about **February 2, 2018**.

After Wilson utterly failed to set the matter for trial, and to produce discovery, both charges of Threatening the Use of Destructive Devices and Harassment First Degree were finally dismissed on **August 30, 2018,** and **October 19, 2018,** respectively. LaConey was finally released from detention on **October 22, 2018**. LaConey served a total of 30 months in jail, 27 of which were consecutive, for naught, when he should have been released years earlier, by Order of the Fifth Circuit Court, notwithstanding that the court was disqualified. LaConey lost his job and all his material possessions, including all his mother's precious, and sentimental effects. [LaConey was diagnosed with treatable cataracts, prior to revocation of his bond for the purpose of the competency examination, which would have been covered by LaConey's vision care plan provided by LaConey's previous employer. LaConey's cataracts worsened, during his extensive pre-trial detention. LaConey is now left without vision care coverage and is forced to seek care from state

subsidized coverage, and may be subject to reduced quality of care, as a result.]

Upon LaConey's release from detention, LaConey requested the return of his cellphone, which was seized by the Richland County Sheriff's Department, pursuant to LaConey's arrest on **July 3, 2014**. LaConey was informed via email that neither the Sheriff's Department nor the Attorney General's Office was in possession of the phone, which contained irreplaceable and invaluable data, including the only remaining photographs and videos of LaConey's mother, before her unfortunate demise. Wilson's loss of LaConey's phone, and presumed evidence in chief, reasonably infers that Wilson had no intention of prosecuting either the threatening case or the harassment, first degree case, as further evidenced by Wilson's failure to produce discovery. Therefore, LaConey's protracted, pretrial detention was purposeless.

## LEGAL ARGUMENTS
### (Judicial Disqualification)
### (Conflict of Interest)
### (Change of Venue)

The entire Fifth Circuit Court, and all judicial divisions and officers thereof, as an alleged victim of LaConey's alleged criminal acts, was disqualified, conflicted out of, and lost jurisdiction to adjudicate the charges of Harassment, Second Degree, Harassment, First Degree and Threatening the Use of Destructive Devices, in which the Court, as an alleged victim, benefited from its own decisions. [When a Chief Administrative Judge is disqualified in South Carolina, in those circuits with two chief administrative judges, the matter or proceeding shall be referred to the other chief administrative judge. If the other chief administrative judge is also disqualified, the matter or proceeding shall be referred to the chief administrative judge of an adjoining circuit. South Carolina Supreme Court Order: 2007-06-28-03, as amended.] [*See also*, Canon 3,

South Carolina Code of Judicial Conduct.] In the instant case, the adjoining Eleventh Circuit likewise was disqualified, based on the extrajudicial acts of Eleventh Circuit court officers. Additionally, it was prejudicial to LaConey, and violative of LaConey's Due Process right to trial before a fair and impartial tribunal, for the Fifth Circuit Court to adjudicate the same proceedings in which it, as an alleged victim, could benefit from its own decisions. The Fifth Circuit Court's direct interest in the outcome of the proceedings, was fatally defective to the same proceedings. In *Tumey v. Ohio*, 273 U.S. 510, 520 (1927), the United States Supreme Court held it was violative of due process for a judge to receive compensation from the fines imposed upon convicted defendants. In other cases, the Supreme Court has found that contemptuous behavior in court may affect the impartiality of the presiding judge, so as, to disqualify such judge from citing and sentencing the contemnors. [*See, Mayberry v. Pennsylvania*, 400 U.S. 455, 464 (1971)]. In the underlying cases, there were glaring conflicts of interest of the trial court, necessitating change of venue to an impartial tribunal. LaConey submits that it is inconsequential that the presiding judges of the Fifth Circuit Court were visiting from foreign circuits. Once a judge "sits" in a foreign circuit, such judge shall be invested with all powers equal to the resident judges of the assigned circuit. South Carolina Code § 14-5-350, et. seq. LaConey submits that the investment of judicial powers imputed the conflict of interest. LaConey further submits that the potential for animus, by the Fifth Circuit judiciary, is reasonably conceivable.

**(Harassment Second Degree)**
**(Probable Cause)**
**(Unlawful Arrest)**
**(Competency)**

LaConey was arrested for Harassment, Second Degree, two counts, against four Fifth Circuit judges in their official capacities. Harassment, Second Degree is clearly defined by

South Carolina Code § 16-03-1700(B) as "a pattern of intentional, substantial, and unreasonable intrusion into the private life of a targeted person that serves no legitimate purpose and causes the person and would cause a reasonable person in his position to suffer mental or emotional distress. Harassment in the second degree may include, but is not limited to, verbal, written, or electronic contact that is initiated, maintained, or repeated." Undoubtedly, the actions of LaConey utterly failed to rise to the level of the charge, where LaConey's communications to the judges were directed to their official capacities, served a legitimate purpose, and were not "maintained, or repeated". LaConey submits that it is impossible to "harass" judges in their <u>official</u> capacities and that judges who feel "harassed" by litigants are limited to power of contempt. Therefore, Lott lacked probable cause to affect the arrest of LaConey for the charges of Harassment, Second Degree. Finally, LaConey submits that Newman erred in compelling LaConey to represent himself when there was a reasonable doubt of LaConey's competence to do so. *See*, <u>Indiana v. Edwards</u>, 554 U.S. 164 (2008). [A defendant can be competent to stand trial without having mental competence to represent himself.]

### (Threatening the Use of Destructive Devices)
### (Crime-Fraud Exception to Attorney-Client Privilege)
### (False Criminal Complaint)
### (Probable Cause)
### (Unlawful Arrest)
### (Sham Prosecutions)

As counsel for LaConey, Koger violated his duty to ensure that LaConey had an intent to commit a crime or fraud before disclosing privileged and injurious client communications to third parties. Therefore, Lott lacked probable cause to affect the arrest of LaConey for the charge of Threatening the Use of Destructive Devices, based on the spurious criminal complaint of Koger.

Further, Wilson violated his duty to ensure that his prosecution of LaConey was based on valid grounds. Lack of the foregoing bona fides reasonably infers that Wilson's prosecutions of LaConey were sham proceedings and constituted malicious and vindictive prosecutions.

### (Harassment First Degree)
### (False Criminal Complaint)
### (Probable Cause)
### (Unlawful Arrest)
### (Sham Prosecutions)

There is a reasonable inference that Lott and the Wilson had conspired with Pelzer to have LaConey arrested for the Harassment First Degree charge, to increase the likelihood that LaConey's bond would be denied, which it was, initially. The transcript of the bond hearing would show that the denial of LaConey's bond was based primarily upon Pelzer's admonitions, and not based on the threatening charge. Wilson failed to ever produce discovery and failed to set the matter for trial, during LaConey's extensive pretrial detention, pending the results of a protracted competency process. Pelzer absconded from the State of South Carolina after LaConey's arrest, and Wilson knew or reasonably should have known that the Fifth Circuit Court had lost jurisdiction over the matter. Additionally, Lott lacked probable cause to affect the arrest LaConey for the charge of Harassment, First Degree, based on the spurious criminal complaint of Pelzer.

### (First Amendment Retaliation)
### (Vindictive, Malicious and Sham Prosecution)

A core purpose of the First Amendment is "to protect unpopular individuals from retaliation—and their ideas from suppression." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995). The First Amendment thus restrains the government from taking adverse actions against individuals as retaliation for engaging in constitutionally protected speech, a safeguard that has been extended to nearly all aspects of government action, including the use of prosecutorial authority, see, e.g., Hartman v. Moore, 547 U.S. 250,

256 (2006), the terms of public employment, see, e.g., Perry v. Sindermann, 408 U.S. 593, 597 (1972), and

the provision of benefits, see generally Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr, 518 U.S.

668, 674 (1996). In short, the prohibition on retaliatory actions ensures that "[t]he power of the state . . .

not be used to 'drive certain ideas or viewpoints from the marketplace.'" Wollschlaeger v. Governor, Fla.,

848 F.3d 1293, 1327 (11th Cir. 2017) (quoting Simon & Schuster, Inc. v. Members of the N.Y. State Crime

Victims Bd., 502 U.S. 105, 116 (1991)). Because LaConey's arrest for Harassment, First Degree was

implicated by LaConey's exercise of free speech about Lori Pelzer and her business activities, the

arrest therefor constituted First Amendment Retaliation. Therefore, LaConey's arrest was

unlawful.

### (Deprivation of Counsel)

Due to the disqualification and loss of jurisdiction of the Fifth Circuit Court, and its

officers, it was violative of due process, for the Fifth Circuit Court to appoint LaConey's counsel.

Additionally, under South Carolina Code § 14-5-350, circuit judges lack jurisdiction over foreign

circuit courts, including the appointment of foreign circuit public defenders. Further, under South

Carolina Code § 17-3-520(B)(1)(14), 530(A)(B)(1)(2), circuit public defenders lack jurisdiction

to represent criminal defendants in foreign circuits. Therefore, the Fifth Circuit Court's

appointments of Chaplin, Koger and Hodge; and, McMahon's appointment of the Eleventh Circuit

Public Defender, to represent LaConey in the Fifth Circuit, were void and deprived LaConey of

his right to counsel under the Sixth Amendment.

### (Competency Examination)
### (Denial of Bond)
### (Unlawful Pre-Trial Detention)
### (Speedy Trial)
### (Cruel and Unusual Punishment)

It was a denial of LaConey's due process rights for the Fifth Circuit Court, as an alleged victim, to adjudicate matters pertaining to LaConey's competence and bond. Additionally, McMahon refused to entertain his own order for LaConey's release from detention, when his Order for competency examination contained a provision for LaConey's release, upon compliance with the examination, and that LaConey's bond would "remain in effect". **LaConey's counsel, Hodge, was a signatory to the said Order.** LaConey complied with the order on **August 1, 2016**. Wilson failed to set the matter for trial, after LaConey was found competent to stand trial, by Order of that court, filed **February 2, 2018,** notwithstanding LaConey's repeated motions for speedy trial. LaConey was finally released from detention on **October 22, 2018**. LaConey submits that his excessive detention, without trial, after completing the pretrial competency examination, was unreasonable and unwarranted. The failure of Wilson to set the matter for trial, while LaConey was detained without bond, pending an unduly protracted competency process, was manifestly unjust and denied LaConey an opportunity to subject Wilson's case to adequate adversarial testing. Therefore, LaConey's detention was rendered purposeless and punitive. The failure to proceed to trial, during LaConey's excessive and unnecessary detention, was violative of the Fourth Amendment and constituted cruel and unusual punishment. *See*, Bell v. Wolfish, 441 U.S. 520, 521 (1979) ["In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty, without due process of law, the proper inquiry is whether those conditions or restrictions amount to punishment of the detainee. Absent a showing of an expressed intent to punish, if a particular condition or restriction is reasonably related to a legitimate nonpunitive governmental objective, it does not, without more, amount to "punishment," but, conversely, if a condition or restriction is arbitrary or purposeless,

12 of 17

a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."]

## V.    ADDITIONAL RELIEF SOUGHT

### FINDINGS OF FACT

#### Defendant Leon Lott

1.    Lott, while acting de facto as Richland County Sheriff, lacked probable cause to affect the arrest of LaConey for the charges of Harassment, Second Degree, Two Counts.

2.    Based on Pelzer's criminal complaint of LaConey's exercise of free speech, Lott, while acting de facto as Richland County Sheriff, lacked probable cause to affect the arrest of LaConey for the charge of Harassment, First Degree.

3.    Based on Koger's disclosure of LaConey's privileged client communications, Lott, while acting de facto as Richland County Sheriff, lacked probable cause to affect the arrest of LaConey for the charge of Threatening the Use of Destructive Devices.

4.    Based on the foregoing pattern of unlawful arrests, Lott did engage in a conspiracy with the co-defendants against LaConey's civil rights.

#### Defendant Lori Pelzer

1.    Pelzer's criminal complaint that LaConey had engaged in Harassment, First Degree, based on LaConey's exercise of his first amendment rights, lacked merit.

2.    Based on the foregoing, Pelzer did engage in a conspiracy with the co-defendants against LaConey's civil rights.

### Defendant Joshua Koger, Jr.

1.    Koger's false criminal complaint that LaConey threatened to use destructive devices against the Richland County Judicial Center, while acting de facto as LaConey's counsel, was not covered by the Crime-Fraud exception to the Attorney-Client privilege.

2.    Based on the foregoing, and an inference of Koger's retaliation against LaConey, Koger did engage in a conspiracy with the co-defendants against LaConey's civil rights.

### The State Trial Court

1.    The Fifth Circuit Court, as the alleged victim of LaConey's alleged criminal acts, was disqualified and conflicted out of adjudicating the charges of Harassment, Second Degree, two counts.

2.    Due to disqualification of the Fifth Circuit Court, there should have been a change of venue for the charges of Harassment, Second Degree, two counts.

3.    The Fifth Circuit Court, as the alleged victim of LaConey's alleged criminal act, was disqualified and conflicted out of adjudicating both the charges of Threatening the Use of Destructive Devices, and Harassment First Degree.

4.    Due to disqualification of the Fifth Circuit Court, there should have been a change of venue for the charges of Threatening the Use of Destructive Devices, and Harassment First Degree.

### Defendant Clifton B. Newman

1.    Due to disqualification, Newman, while acting de facto as State Fifth Circuit Judge, lost jurisdiction to entertain any matters pertaining to LaConey's bond and appointment of LaConey's counsel for the charges of Harassment, Second Degree; thereby, rendering such actions void and without binding effect.

14 of 17

2.    Should the trial court not have been disqualified, LaConey was entitled to appointment of substitute counsel, by Newman, to replace Koger in representing LaConey for the charges of Harassment, Second Degree, two counts.

3.    Newman violated LaConey's due process rights by compelling LaConey to proceed to trial pro se within hours, without a continuance to prepare for trial, and while there was a reasonable doubt of LaConey's competence to represent himself, for the charges of Harassment, Second Degree, two counts.

4.    Due to disqualification, Newman, while acting de facto as State Fifth Circuit judge, lost jurisdiction to entertain any matters pertaining to LaConey's bond and appointment of LaConey's counsel for the charges of Threatening the Use of Destructive Devices and Harassment, First Degree; thereby, rendering such actions void and without binding effect, and denying LaConey due process, and equal protection.

5.    Based on the foregoing, Defendant Newman did engage in a conspiracy with the co-defendants against LaConey's civil rights.

### Defendant R. Knox McMahon

1.    Due to disqualification, McMahon, while acting de facto as State Fifth Circuit judge, lost jurisdiction to issue an Order for Competency to Stand Trial Examination and its consequential revocation of LaConey's bond.

2.    Notwithstanding the proposed disqualification, McMahon lacked jurisdiction to appoint the Eleventh Circuit Public Defender to represent LaConey in the Fifth Circuit; thereby, denying LaConey counsel, due process, and equal protection.

15 of 17

3.     Notwithstanding the proposed disqualification of the Fifth Circuit Court, McMahon should have released LaConey from detention, after LaConey complied with the Order for Competency to Stand Trial Examination, as ordered by McMahon.

4.     Based on the foregoing, McMahon did engage in a conspiracy with the co-defendants against LaConey's civil rights.

### Defendant Robert. M. Madsen

1.     Madsen, while acting de facto as State Eleventh Circuit Public Defender, lacked jurisdiction and authority to represent LaConey in the Fifth Circuit Court, where the matter originated in the Fifth Circuit; thereby, denying LaConey his right to counsel.

2.     Based on the foregoing, Madsen did engage in a conspiracy with the co-defendants against LaConey's civil rights.

### Defendant Jason Scott Chehoski

1.     Chehoski, while acting de facto as State Assistant Eleventh Circuit Public Defender, lacked jurisdiction and authority to represent LaConey in the Fifth Circuit Court, where the matter originated in the Fifth Circuit; thereby, denying LaConey his right to counsel, due process, and equal protection.

2.     Based on the foregoing, Chehoski did engage in a conspiracy with the co-defendants against LaConey's civil rights.

### Defendant Jocelyn T. Newman

1.     Due to disqualification, and due to a pre-existing filed order, Jocelyn Newman's order denying LaConey's release from detention was void and without binding effect; and, denied LaConey his liberty, due process, and equal protection.

16 of 17

2.      Based on the foregoing, Jocelyn Newman did engage in a conspiracy with the co-defendants against LaConey's civil rights.

## Defendant Alan McCrory Wilson

1.      Due to disqualification of the Fifth Circuit Court, the prosecution of LaConey for the charges of Harassment, Second Degree, Two Counts, while Wilson acted de facto as State Attorney General, was null and void, or otherwise, invalid.

2.      Due to disqualification of the Fifth Circuit Court, and based on Wilson's loss of LaConey's cellphone, failure to produce discovery, and failure to proceed to trial, during the twenty-seven (27) month detention of LaConey, pending the protracted competency examination results, the prosecutions of LaConey for the charges of Threatening the Use of Destructive Devices and Harassment, First Degree, while Wilson acted de facto as State Attorney General, were null and void, or otherwise, invalid.

3.      Notwithstanding the proposed disqualification of the Fifth Circuit Court, Wilson violated LaConey's right to speedy trial.

4.      Based on the foregoing, Wilson did engage in a conspiracy with the co-defendants against LaConey's civil rights.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    Aug. 25, 2021

Signature of Plaintiff    Glen K. LaConey

Printed Name of Plaintiff    Glen K. LaConey

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address    _____

_____

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number    _____

E-mail Address    _____